And we'll hear counsel in the U.S. against Schaefer. Good afternoon, Your Honors. May it please the Court, my name is Allegra Glasshauser and I represent Appellant Gregory Schaefer. Your Honors, Mr. Schaefer twice asked to leave the interrogation. Twice he was told he was not free to do so. The only reasonable conclusion was that he was in custody. No, it isn't. There are other reasonable conclusions, aren't there? That it would have been difficult for them to complete the investigation, the work that they were doing, if he was away. That they might wish to ask him a question or two about what they found or where they could go or what they could look for while the search is going on. But Mr. Schaefer was only told that he wasn't free to leave and maybe he was told that it was a security issue. That's what the agent testified. But we know that there's a totality of factors that courts take into account in deciding whether a person's in custody or whether he's temporarily restrained from leaving at a given moment. But permanently not. He was told he wasn't in custody and there were moments in which they didn't want him to leave and told him he couldn't. But that was not the totality of the picture, was it? Well, he was told he wasn't in custody initially. Afterwards, he was told twice that he couldn't leave. And he was told that he couldn't leave even though his requests to leave were quite serious. He was saying, I need to see an attorney and I need to see that attorney because he has money I need for medicine. But that's not asking for an attorney for Miranda purposes. I'm not suggesting it is. But what I'm saying is these are the types of serious requests that a reasonable person would think, unless I'm under arrest, there's no reason I couldn't leave to complete these tasks. A lot of it would depend on the time that's involved. How long was he kept there? The interrogation took place over the course of two hours. There was about an hour of questioning over the course of two hours. When one of the agents got up to walk away, another one came to sit with him. There were nine agents in his small office. So this is a police-dominated atmosphere. And crucially, he's not actually ever allowed to leave. He is actually arrested at the end of this interrogation. I mean, they're entitled to arrest if they find as a result of the interrogation and any search that might go on evidence that now amounts to probable cause. Of course. They're entitled to arrest him. But that's one of the factors that courts look to, whether the person is in fact allowed to leave at the interrogation, supports that it wasn't reasonable to think that they weren't under arrest earlier. Here, we have two factors that aren't present in any of the cases that the government cites for saying that a person isn't in custody. In fact, most of those cases, they point specifically to the absence of any statement by law enforcement that you're not free to leave. That's a crucial indication that the person is not in custody. The government hasn't pointed to any case where the person is told, you're not free to leave, twice, and then actually is arrested at the end of the interrogation where any court has found that the person wasn't in custody. And the case most recently decided by this circuit, United States v. Foe, is very relevant here because in that case, the circuit said, those factors in Foe go right up to the limits of what is constitutional interrogation without Miranda. And the court points out in Foe that the defendant was never told that she couldn't leave and that she was actually allowed to leave at the end of the interrogation. And the absence of those two factors here is crucial, and none of the other totality of the circumstances dispel the reasonable conclusion Mr. Schaefer would have had that when he's told he can't leave twice, that he cannot leave. The government says it's temporary, and Your Honor has suggested it was temporary, but Mr. Schaefer wasn't told it was temporary, and this is an objective inquiry. Would a reasonable person think it was temporary? The exit was blocked, further indicating he wasn't free to leave, and he wasn't told he'd be able to leave at a later point. That's custody. And in this case, that error was important, because this interrogation revealed statements from Mr. Schaefer admitting that the e-mail address and the computer are his, and that's where the crucial evidence in this case for the prosecution comes from. Is there any doubt that in response to those questions that he could have declined to answer them? What are the findings of fact on that? About whether he could have declined to answer questions? He doesn't ask to not answer the questions. What he asks for is to leave. And when you're in a police-dominated atmosphere and you're not allowed to leave to see your attorney, you're not allowed to leave to get your medicine, he's actually taken to the hospital after interrogation as well. The only thing that a reasonable person could conclude is that they're under the same circumstances as an arrest. To find otherwise would be new case law. That would be contrary to what this circuit and other circuits in the Supreme Court has held. And this wasn't the only error in Mr. Schaefer's trial. I'd like to move to my second point. In Mr. Schaefer's trial, it's a short trial, it's a three-day trial, and we have an hour-and-a-half of video evidence of unrelated crimes, crimes not about the charges he was facing. If this was any other... The actual video evidence that was shown at trial was less than that. The time at trial of showing these other videos was less than an hour-and-a-half. I believe one video was 87 minutes, and then there were two short videos. The whole video was, but did they play the whole video? There were two short clips that were six minutes, and, as well, there was one that was much longer. A total of 15 minutes, right? I believe it was much longer than that, Your Honor. I suppose the other side will enlighten us on that, and you'll have a chance to respond. Why doesn't Rule 413 cover it, the rule of evidence, which permits, in effect, propensity evidence in these assault cases? Right. Rule 14 does cover it. I'm arguing that Rule 14 is unconstitutional. 413. 413, yes. If this were any other type of charge, we would probably all agree. Denial of due process, is that your point? Exactly. Does Rule 404 define the parameters or the boundary of due process? Rule 413? No, the propensity rule, the normal propensity. Normal rule. 404. Right. So Rule 404, yes. I mean, obviously, this goes further. Exactly. It permits evidence for propensity purposes. Right. It goes much further. Right. Well, it goes further. The other one excludes it if it's just for propensity. This one says propensity is sufficient. Right. And I believe that we have taken the position that it can't be the 413 evidence alone, but it can come in for propensity in combination with other evidence in order to convict. It can't exist. I mean, they can't convict a person of Crime A because he committed Crime B and C. Yes, Your Honor. But this Court has never ruled on the constitutionality of 413. No, I know. And 413 is different from 404B precisely because it's unlimited. It's not — Have other courts ruled on the constitutionality of 413? Other courts have. And they've found that it's constitutional. They have. They've pointed to the fact that Rule 403 saves it from unconstitutionality because if it's too prejudicial, it won't come in. But as a practical matter and by design in the passage of Rule 413, Rule 403 is merely a rubber stamp. The presumption is for admission. And that's not true for any other crime. And, again, if this was a situation where we'd say — — where we assaulted these women or had consensual sex with minors, if you will, or forced sex with minors, whatever, did so after having them try on bathing suits. And that was true in every case, right? Why isn't that a sort of modus operandi that tends to confirm the evidence in this case and, therefore, it would come in under 404 even if 413 wasn't on the books? We could have a debate about whether any of this — Don't we have to look at whether the error is harmless or not? The government hasn't even argued that the error is harmless because this evidence was so prejudicial. There's no way the jury couldn't have considered it as perhaps guilt of the entire offense if not incredibly persuasive. There were details independently of this. Yes, Your Honor. And you had the victim's testimony as well. Right. Right. So, you know, there was substantial evidence independently of these other two videos. The crucial difference here between 404b and 413 is here it comes in for any purpose, including for propensity, to convict him just because he's a bad guy, to say once convicted of a crime, then you must have been convicted of the next one. Beyond that, it's once convicted of a sex crime, then you can take that into account in deciding his guilt on another sex crime. Right. And that's what I wanted to point out, Your Honor. The fact that it's a sex crime is what clouds all of our judgment about this evidence. If we were to say once a robber, always a robber, we'd agree that wouldn't be appropriate. That's what Congress was addressing when they passed 413. Right. But social science evidence and even the Department of Justice themselves have since debunked the idea that sex offenders are somehow more likely to be to recommit those offenses than people who commit other crimes. That's something that the Department of Justice, their own report. I'm not sure that that makes sense, given the nature of recidivism in the sex crime area. It seems that we have statutes that restrain people civilly. The enhanced sentencing for sex criminals basically for specific deterrence because of the likelihood that they'll repeat. We have registry of sex offenders because of the danger that they pose to the community generally because of the possibility of recidivism. Right. These propensities are not erased. I mean, it's not like a crime of opportunity in the traditional sense. These people have issues that cause them to commit these crimes. And all of those things Your Honor points to illustrate the extreme stigma of introducing this type of evidence, even though the scientists who researched this have concluded that it's not actually true that people who commit these crimes are more likely to recommit them than people that commit robberies. And it's the fact that it's so difficult to look at these sort of offenses in an objective way that makes it We're reattacking here a judgment that Congress reached. That is, these social considerations of this particular policy considerations underlying the passage of 413. This was a matter that Congress reached as a decision that Congress reached as a political matter. That's true. But Congress cannot reach a decision allowing evidence that undermines a defendant's due process rights. That's true. That's true if it's going to undermine a fair trial. And that's the issue on whether it's constitutional or not. Exactly, Your Honor. If we adopted your view, would we be the only circuit to have done that? That's true, Your Honor. But there aren't that many courts that have looked at this, and not recently. There are a few state courts that have recently looked at very similar laws and found them to be unconstitutional, instead proposing something akin to 404B, so the normal evidentiary standard that applies to all crimes where evidence can still be admitted if it's relevant to a specific limited purpose and the jury is instructed they can only consider it for that purpose. Did the district court here admit the evidence solely under 413, or did the district court hedge its bets by saying 413 and 404? It was just admitted under 413, and the jury instruction indicated that, because the jury instruction didn't limit it. It didn't say you may only consider this as evidence of intent or motive or something like that. It was for any purposes. It was admitted after a 403 analysis, though, right? Yes, Your Honor. That's right. And you're from the Eastern District of New York, which as a court has a lot of experience in developing the law of evidence, as well as having many advanced thinkers on these issues. I'm surprised that this has never been dealt with directly by any of the judges of the Eastern District, or has it? Not that I know of, Your Honor. I was surprised as well when I got this case. It hasn't been dealt with by the Supreme Court and not by this circuit and a number of others. If you're right, maybe you'll get a chance to go to the Supreme Court and sort them out on this question. Perhaps, Your Honor. Thank you. Thanks very much. Mr. Baldwin. Good afternoon, Your Honors, and may it please the Court. My name is Peter Baldwin, and I'm an assistant United States attorney in the Eastern District of New York. I'd first like to address Mr. Schaffer's argument that he was in custody when he was interviewed by law enforcement agents. There's no dispute that Mr. Schaffer was told that he could not leave his office during the interview, but as the cases in this and other circuits make clear, a person is not necessarily in custody simply because he's not free to leave an interview. Instead, the restriction of an individual's freedom of movement is just one factor in the analysis of determining whether the person is in custody. And rather than focus solely on whether Mr. Schaffer was permitted to leave his office at a particular point during the interview, this Court should examine, as the district court did, all of the facts and circumstances surrounding the interview in order to determine whether Mr. Schaffer was in custody. And in this case, the totality of the relevant facts weighs against a conclusion that Mr. Schaffer was in custody. For example, it's undisputed here that Mr. Schaffer was never handcuffed or otherwise physically restrained at any point during his interview. At no point during the execution of the search warrant did any agent draw a weapon. Mr. Schaffer was interviewed in the familiar surrounding of his own office. He voluntarily agreed to be interviewed. He was allowed to drink coffee and smoke cigarettes during the interview. He was told prior to the interview that he was not under arrest, and he never asked to have an attorney present during the interview. All that said, Mr. Schaffer was told that he was not free to leave the interview. When he asked to leave the office, the case agent twice told him that he couldn't leave because doing so would present, and I quote, a security issue, given that the search of his office was ongoing and that there were boxes containing evidence blocking the exit to the office. What's the security issue? The security issue, Your Honor, is the fact that at that point in time, the agents who are searching the office have begun to compile evidence pursuant to the search warrant. They are taking it out of where it may be stored in Mr. Schaffer's office. They're laying it on the ground of the office. They're laying it in boxes in the office. And all this stuff is piling up right in front of the exit. The security issue is a kind of chain of custody concern. Is that it? I think that's right. They're not worried about intrusive, anybody intervening? No. I don't think that there's a real concern about letting somebody else in or Mr. Schaffer attacking an agent or anything like that. I think it's, as Your Honor points out, really a preservation of the evidence argument. One thing that bothered me about your side of this case, the agents had probable cause to arrest him, notwithstanding a search based upon the evidence that they'd had at that point, the victim's testimony and the e-mails, correct? I think that's hard to say, Your Honor. Probable cause. I think that's probably right, yes. That's probably right. If you have probable cause to arrest, it's possible that you go in, tell a guy he can't leave, and don't give him his Miranda warnings in order to see what he might say in the absence of Miranda warnings, when you could arrest and give Miranda warnings. I think that's probably true in a lot of cases, Your Honor, where search warrants are executed. The fact of the matter is there's probable cause to go into whatever premises. But I'm saying probable cause to put him in custody and arrest him at that point and then conduct a search. I mean, you could do that. They could have done that, and you would have no complaint about that. I mean, you would argue that that was perfectly appropriate. They could have done that in this case, Your Honor, but, in fact, they didn't, and there's nothing that is, given the totality of the facts, there's nothing erroneous about that. No, no, no.  I'm just trying to understand why the agents wouldn't do that. And one more nefarious reason one could come up with is that they were going to try and see what they could get out of him before giving him his Miranda warnings. I think that as a nefarious conclusion that isn't warranted by any of the facts in the record in this case, it's certainly a possibility, but I don't believe that it's warranted by what's in the record before. I'm not saying that I don't want to ascribe bad motives to these agents in the absence of some definite proof on the question, but it's just a troublesome aspect of it to my mind. I understand, Your Honor, but certainly I think the agents have differing experiences as to whether a defendant is going to talk or agree to be interviewed. There's no guarantee that even going in the defendant is going to say anything when agents show up to execute a search warrant. So certainly I understand the range of possibilities that the court could consider in ascribing motive to the agents here. In this case, wasn't there a situation where he mentioned that he asked the agent whether he should get a lawyer? The agent said, I can't help you with that. What the record reflects on that point, Your Honor, is that at some point Mr. Schaffer does ask, should I have a lawyer here? And the case agent responded with something to the effect of, I can't advise you on whether or not you should have a lawyer. If you want one, you can get one. There are rules that say that that doesn't trigger a Miranda duty because it's not an unequivocal request. I think the other important factor here to consider on that point is that after that discussion or back and forth, Mr. Schaffer continues to answer questions. He doesn't appear to have any reservations about continuing to answer the agent's questions. It's simply a back and forth, and then he goes on answering the questions. How would you describe what happened at the scene that we're discussing as a result of his, for whatever reason, having to stay in place? What happened? How would you describe what happened? I should be asking the opposing counsel this question, and I will. So what is it that triggers the concern here? You mean the concern? What happened as a result of his remaining there? How would you describe what happened? Well, I would describe it as at the beginning of the search warrant, as the agents enter his office, Mr. Schaffer was approached by two agents who asked if he would agree to be interviewed. He said he would. Those two agents took Mr. Schaffer off to the side, out of the way of the other agents who were conducting the search. That interview occurred while the search of Mr. Schaffer's office was ongoing, but in view of Mr. Schaffer and the other agents. And as I've described before, the evidence that is compiled is brought out and placed, because the layout of the office is brought out and placed in the corridor that leads out to the exit of the office building. Mr. Schaffer is there. At some point, the other agents finish up their search, and the lead case agent goes over to consult with these other agents to see what they have found. There's no evidence that he comes back and resumes questioning Mr. Schaffer at that point. In fact, what the testimony is, is any evidence presented at trial that emerges from this particular situation, other than the items of, what do we call them, film or video? Is there anything else? I mean, is there any evidence of what he said? There were a few of Mr. Schaffer's statements were elicited at trial, Your Honor. I think principally. His computer. Yes, Your Honor. There's principally about. These e-mails were ones that he sent. Right. So I think if you want to call it the most important statements that are elicited from the interview are that he admitted it was his office, he admitted that the laptop computer was his, and he provided the password. He admitted that the e-mail address that was used to communicate with the victim was used by him. Those, I think, are probably the most important. And as we address in our brief, probably the most important of those are the e-mail and the computer. And I think there it's our harmless error argument because there's ample other evidence in the record to support a conclusion that, A, Mr. Schaffer uses this e-mail address, and, B, that the computer is his. With respect to the e-mail, we have e-mails that are admitted at court or admitted at trial that contain a phone number that is subscribed to Mr. Schaffer. And I think, frankly, most importantly, any time that e-mail address is used to set up a meeting, Mr. Schaffer is the one who's there. So the evidence clearly supports a conclusion that it's his. In fact, I guess what you're saying is that if he said nothing, it might have been a little ‑‑ he might have had to put on a little more evidence, but you could have reached the jury would have had to find the same things. In addition to that, of course, there's the other crime evidence as well and the similarity between this crime and those other crimes. Yes, Your Honor. Which are on that computer. I see I'm running out of time, but if the court would indulge in terms of the 413. And you've got his picture in those videos. You can identify him in those videos, correct? In the videos admitted pursuant to Rule 413? No. Yes, Your Honor. It is clearly Mr. Schaffer. What about the video regarding this victim? Not so much. You can at one point. There are multiple videos involving this victim, and at one point Mr. Schaffer is seen in one of those videos. Primarily you see the victim and you have Mr. Schaffer's voice in the background. And just to clarify, I would just request some additional time to address this Rule 413. Don't take time asking for permission. One thing that I wanted to address right off the bat on this issue is the confusion about the length of these videos that were admitted and shown at trial. And I just want to be very clear. The only thing that was admitted at trial and shown to the jury were these edited clips of these videos. In total, these nine edited clips were 15 minutes or less of video time. So I think there was some confusion about that, and I just wanted to be clear on the record. Is there any accounting for the sequence between the timing, between the agents telling him that he's not free to leave, he can't leave for security reasons, and the statements that he made? Were they before, after? In other words, were any of the statements made prior to that admonition by the agents that he couldn't leave? Your Honor, I profess that I don't think the record is clear on that point. What I think the record would support is the fact that the interview was going on for some period of time before there was any request to leave. I don't think that the record supports the conclusion that there was, say, 30 seconds of questioning and then he asked to leave. Obviously no verbatim transcript occurred of that interview. Right. There is no verbatim transcript of that hearing. So I can't answer with particular clarity, but what I can say is I believe the records would support a conclusion that there was some amount of conversation that was had between the agent and Mr. Schaffer before. But it's not clear that he admitted his ownership of the computer or that it was his office or the password prior to being told that he couldn't leave. No. On the record before us, I think that's correct, Your Honor. And just very briefly to address the Rule 413 issue, as the Court pointed out in my opponent's argument, every other circuit that has addressed this argument has soundly rejected it and held that Rule 413 is constitutional and doesn't violate a defendant's due process rights. It's well settled that the due process clause will only invalidate a rule or an evidentiary rule like Rule 413 only if it violates fundamental conceptions of justice which lie at the base of our civil and political institutions. To be fair to the other side, though, even the Department, the Justice Department, wasn't in favor of Rule 413, correct? I think that that's not necessarily true. I think the Department was in favor. It may be one of the few who was, who did come out in favor. There were a lot of witnesses or comments on Rule 413. Certainly, I think that's true, Your Honor. I think there were— Congress was determined to pass this as a political matter. There were criticisms of the rule, and I would just simply note that I think it's equally important that in the opinions that have considered it after the passage, many courts have pointed out the important justifications for having a rule like this and made note of the justifications that Congress gave at the time of passage, and courts have subsequently come to see that there are important justifications for having a rule like this in the particular types of cases where this evidence is allowed. This rule, I hadn't quite focused on this, but as Walker's questions elicit a simple question, this rule did not emerge from the Federal Rules Committee? That's correct, Your Honor. It was passed as part of an act of Congress. This rule and its companion. It wasn't the Department. It was the judiciary that opposed it. There was some negative comments from the judiciary, and I think— The Rules Committee was against it. Yes, and if the court reads the commentary in the notes, there certainly were at the initial passage of the rule some commentary that would be, I think, accurately reflected as negative about the rules. Well, it does upset the balance under 404. I mean, 404 was thought to be a pretty good rule. Maybe a lot of defense lawyers don't like it because there's so many exceptions to the propensity point. It has to be pure propensity. I mean, it can come in for a whole lot of other reasons. It certainly is a different analysis than 404, but I think importantly, as we've tried to stress in our brief, you still have the 403 balancing. And while my opponent seems to say that that's a rubber stamp, I would argue that that's not true, principally because I would conceive that there's not a lot of case law specific to that point. But what I would argue and propose to the court is that 403 would tend to operate like it did in this case, where the—if you want to call it this, the specter of 403 is there in terms of what evidence the government is putting forward to admit pursuant to Rule 413 and what evidence the district court is willing to allow the government to do. So what you had in this case was the district court saying, all right, the government wants to admit these videos. Tell me the specific clips of these videos that you would propose to admit. So rather than admit entire videos that are, you know, 90, 100 minutes in length, it gets whittled down to that 15 minutes. And that's how I would propose or argue that 403 typically is— And also there's another protection that is that it can't be the exclusive evidence relied upon. Oh, absolutely, Your Honor. And I think that that was clear in the instruction provided by the district court at the close of trial, that it was specific to that point, specific to the point that you can't convict Mr. Schaffer solely based on the evidence that's included in the videos. That was given to the jury, and that instruction addressed the key concern that Mr. Schaffer's trial counsel had about the 413 evidence. So just to— Just take 30 seconds. Certainly, Your Honor. I just wanted to address one last point, and that is that the evidence here would show that the probative values of these videos was extremely high, as the Court has noted in its questions to my opponent. And they certainly were not outweighed by any prejudice. I made note of the fact that it's only 15 minutes. The district court concluded that they were neither more serious nor more inflammatory than the allegations or other evidence in this case. And any potential prejudice, as I've alluded to just a few seconds ago, was in fact cured by the instructions that were given by the district court, both at the time of the admission of the evidence and at the end of trial. So in conclusion, both Mr. Schaffer's arguments are without merit. First, a reasonable person in Mr. Schaffer's circumstances would not have understood his interview with law enforcement was being conducted pursuant to arrest-like constraints. As such, Mr. Schaffer was not in custody for Miranda purposes. And second, the edited videos showing Mr. Schaffer engaging in sexual assaults of other young girls did not violate Mr. Schaffer's due process rights, and they were more probative than prejudicial. Thus, they were properly admitted pursuant to Rule 413. There's no doubt that the constitutional question was raised in the district court? Yes, Your Honor. The due process argument was raised in briefing on the government's 413 motion. Thank you. Thank you. Just to start where the government ended, Rule 413, you're having this discussion about whether or not these videos of uncharged crimes could be the exclusive evidence of conviction. That really turns everything on its head, right? The point is that he's supposed to be convicted, proof beyond a reasonable doubt, of the elements of the charged crimes, not whether or not he committed these other unrelated crimes. 413 puts a thumb on the scale it's meant to, to make it more likely that people will be convicted of these crimes. That dilutes the fundamental protections for criminal defendants, and that's why it's unconstitutional. With respect to the custody issue, I'd like to turn to Judge Walker's point about the evidence they had when they walked into this interrogation. They had more than enough evidence to arrest him, and I'm sure that they intended to arrest him, and they did arrest him. When they speak to the U.S. attorney, the agents, during the interrogation, there's no question that Mr. Schaffer is going to get arrested. There's no question in Mr. Schaffer's mind, in a reasonable person's mind, that when he cannot leave his office, when he is explicitly prohibited from leaving to see an attorney, he asks if he needs an attorney, but he can't go see one. He's prohibited from leaving to get his medicine. He's explicitly not free to leave. He's explicitly told the exact phrase that this court and other courts use to determine whether or not someone is in custody. The only reasonable conclusion he could have is that it was like an arrest. As far as the timing about the statements, because the record isn't clear, if the court finds that he was in custody, it would need to suppress all of the statements, because we don't know exactly when the statements were made, and there were two separate requests made to leave, and two times he's told he's in custody. Thank you very much. Thank you. We reserve decision.